`UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

INTERNATIONAL BROTHERHOOD OF ELECTRICAL                    04-CV-0907E(Sc)
   WORKERS LOCAL UNION NO. 237,
DAVID A. ROLL, GERALD G. ZELL
RUSSELL QUARANTELLO, DAVID WERNER,
GERAL MANZI and KEVIN MISLIN, as Trustees of
   I.B.E.W. Local No. 237 Welfare Fund,
   I.B.E.W. Local No. 237 Pension Fund,
   I.B.E.W. Local No. 237 Annuity Fund,
   Administrative Maintenance Fund,
   National Electrical Benefit Fund,                                    MEMORANDUM
   Joint Apprenticeship and Training Trust Fund and
   National Labor Management Cooperative Committee Fund,                and

           Plaintiffs,                                              ORDER[1]

    -vs-

MODERN TECH DESIGN & SERVICES, INC.,

         Defendant.

_____

      Plaintiffs — International Brotherhood of Electrical Workers Local Union No. 237

("Union"), several labor management trust funds ("Funds")[2] and trustees of the funds

("Trustees") — commenced this action on November 15, 2004 alleging, *inter alia*, that

defendant employer Modern Tech Design & Services, Inc. did not comply with specific

contractual and statutory obligations, which violated two collective bargaining

_____

     [1]This decision may be cited in whole or in any part.

     [2]The purpose of the Funds is to provide various fringe benefits to eligible employees on
whose behalf employers contribute to the Funds pursuant to collective bargaining agreements
between employers in the building and construction industry and the Union.

agreements ("CBAs") and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1132, 1145. Plaintiffs served the Summons and Complaint upon defendant on November 17, 2004, with proof of service filed with the Clerk of the Court on November 30, 2004. After defendant failed to appear in this action, plaintiffs obtained an Entry of Default from the Clerk of the Court on January 5, 2005. Plaintiffs subsequently filed a March 10, 2005 Motion for Default Judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure ("FRCvP") seeking an order directing defendant (1) to permit and cooperate in the conduct of audits of defendant's payroll books and records for the period of September 1, 2000 through March 31, 2003, (2) to pay plaintiffs any additional fringe benefit contributions, union dues, interest and liquidated damages found due as a result of the audit and (3) to reimburse plaintiffs for their costs and attorney's fees associated with this litigation. For the reasons set forth below, plaintiffs' Motion for Default Judgment will be granted.

Under FRCvP 55, district courts may grant default judgment against a party that has failed to plead or otherwise defend. *See Enron Oil Corp. v. Masonori Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). First, a party moving for default judgment must obtain an Entry of Default from the Clerk of the Court pursuant to FRCvP 55(a). Second, if "the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain," the moving party can seek a default judgment from the Clerk of the Court; in all other situations, the plaintiff must seek a default judgment from

the Court.  FRCvP 55(b).  Plaintiff has obtained an Entry of Default from the Clerk of the Court and now seeks default judgment from the Court pursuant to FRCvP 55(b)(2).

Where the moving party seeks default judgment from the district court, FRCvP 55(b)(2) governs and provides that "[i]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper[.]"  This language indicates that judgment against a defaulting party should be granted only after careful examination of the moving party's claim by the district court.  *See Enron Oil Corp.*, at 96.  Indeed, "a defendant's default does not in itself warrant a court in entering a default judgment [because] [t]here must be a sufficient basis in the pleadings for the judgment entered." *Am. Centennial Ins. Co.* v. *Seguros La Republica, S.A.,* 1996 U.S. Dist. LEXIS 7729, at *57-58 (S.D.N.Y. 1996) (quoting *Nishimatsu Constr. Co., Ltd.* v. *Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *see also Ghartey* v. *Chrysler Credit Corp.*, 1992 U.S. Dist. LEXIS 18185, at *11 (E.D.N.Y. 1992) (citing *Nishimatsu*).

The district court has the sound discretion to ascertain whether sufficient grounds exist for granting default judgment. *Enron Oil Corp.*, at 95.  In exercising this discretion, the district court may evaluate the underlying merits of the substantive claim and should resolve doubt in favor of the defaulting defendant. *Id.* at 96; *Wagstaff-el* v. *Carlton Press*

*Co.*, 913 F.2d 56, 57 (2d Cir. 1990).  A district court may also consider, *inter alia*, the possibility of prejudice to the plaintiffs if default judgment is not granted, the sufficiency of the complaint, the possibility of disputed material facts, whether the defendant's default was due to neglect and the strong federal policy favoring decisions on the merits. *Ironworkers Local 6 Health Care Fund* v. *Stumm-Western Const., Corp.*, 1996 U.S. Dist. LEXIS 13624, at *3 (W.D.N.Y. 1996) (denying motion for default judgment to the extent that the record was insufficient to ascertain the amount of damages owed in an ERISA action involving collective bargaining agreements).

Once a court concludes that a defendant is in default, the well-pleaded factual allegations against that defendant are taken as true except as to the amount of damages claimed.  *Au Bon Pain Corp.* v. *Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *see also Greyhound Exhibitgroup, Inc.* v. *E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.").  This does not mean that liability is established merely because of the default, as a defendant cannot be said to "admit" conclusions of law through default.  *W.A.W. Van Limburg Stirum* v. *Whalen*, 1993 U.S. Dist. LEXIS 8898, at *8 (N.D.N.Y. 1993) (citation omitted).  In other words, "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."  *Id.* (quoting *Nishimatsu*, at 1206 (finding plaintiff's motion for default judgment inadequate where its pleading failed to

demonstrate that defendant was liable under the contract)).  Before judgment can be entered, the court must determine whether the plaintiff's factual allegations are sufficient to state a claim for relief on each of the causes of action for which the plaintiff seeks judgment by default.  *Id.*  In so doing, the court may exercise its discretion to "require some proof of the facts that must be established in order to determine liability."  *Id.* (citation omitted).  In determining damages not susceptible to simple mathematical calculation, a court has the discretion to rely on detailed affidavits or documentary evidence in lieu of an evidentiary hearing and the moving party is entitled to all reasonable inferences from the evidence it offers.  *See Action S.A.* v. *Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok* v. *Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *Au Bon Pain Corp.*, at 65; FRCvP 55(b)(2).

Turning to the facts of this case, plaintiffs allege that defendant is a member of the Niagara Division of the Western New York State Chapter of the National Electrical Contractors Association ("NECA").  The NECA negotiates collective bargaining agreements with the Union on behalf of its members.  Plaintiffs allege that defendant signed a Letter of Assent — a copy of which plaintiffs have included in the record — on October 18, 1994 authorizing the NECA to be defendant's collective bargaining representative concerning labor agreements with the Union and binding defendant to current and subsequent collective bargaining agreements negotiated with the Union by the NECA.  From 1994 to the present, defendant has employed members of the Union

and has made payments of employee fringe benefit contributions to the Funds.  Plaintiffs allege that defendant has never withdrawn from or repudiated the CBAs and has never given written notice to either the NECA or the Union indicating a desire to terminate its participation in any of the CBAs.

The two CBAs — copies of which plaintiffs have provided the Court — have been in effect since June 1, 1998 and require defendant, *inter alia*, to (1) pay monetary contributions ("employee fringe benefit contributions") to the Funds for all the work performed by defendant's employees who are covered by the CBAs at the rates and times as set forth therein, (2) retain and pay the Union membership contributions deducted from each Union employee's wages and (3) permit and cooperate with the Funds and/or their agents in the conduct of audits of defendant's books and records, including, but not limited to, all payroll books and records.  Failure to pay the required employee fringe benefit contributions and the Union membership contributions (collectively "the payments") violates the CBAs and Section 515 of ERISA, 29 U.S.C. §1145.[3]  Pursuant to the CBAs and Section 502 of ERISA, 29 U.S.C. §1132, upon a finding that Section 515 of ERISA has been violated, plaintiffs shall be awarded the

---

[3]29 U.S.C. §1145 states:
"Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

unpaid payments plus interest and liquidated damages on such, in addition to reasonable attorney's fees and costs of the action.[4]

Plaintiffs claim that, on April 8, 2003 and again on July 28, 2003, they sent defendant letters — which plaintiffs have included in their papers — requesting an audit of defendant's September 1, 2000 to March 31, 2003 payroll records which, pursuant to the CBAs, defendant is required to permit.   Subsequent letters were sent and phone calls were made to defendant by plaintiffs and their agents, but such were allegedly ignored by defendant. Plaintiffs claim that, despite their repeated requests, defendant has not permitted or cooperated with the audits as required by the CBAs.  At this time, plaintiffs do not know the amounts, if any, that defendant owes them because they claim that they have been unable to audit defendant's payroll books and records.  Plaintiffs

---

[4]29 U.S.C. §1132 states:
"(g) **Attorney's fees and costs; awards in actions involving delinquent contributions**

        *        *        *        *        *

   **(2)** In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
        **(A)** the unpaid contributions,
        **(B)** interest on the unpaid contributions,
        **(C)** an amount equal to the greater of —
             **(i)** interest on the unpaid contributions, or
             **(ii)** liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
        **(D)** reasonable attorney's fees and costs of the action, to be paid by the defendant, and
        **(E)** such other legal or equitable relief as the court deems appropriate.
For purposes of this paragraph, interest on unpaid contributions shall  determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26."

assert that an audit would determine the amount of defendant's obligations and request from this Court a default judgment requiring defendant to submit to an audit of its payroll books and records for the period September 1, 2000 through March 31, 2003 and, if delinquency in payments is found, to pay all amounts found due and owing as a result of the audit and to pay for the costs of the audit.

In reviewing the CBAs and the subsequent correspondence between plaintiffs and defendant, the Court finds that the NECA representatives signed the CBAs on behalf of defendant, which they were authorized to do and which binds defendant to the CBAs. Thus, pursuant to the CBAs, defendant is obligated to allow plaintiffs and/or their agents to audit its payroll books and records to verify payments made to or due to plaintiffs for the period September 1, 2000 through March 31, 2003[5] and to pay the reasonable costs and attorney's fees incurred by plaintiffs in an action to obtain an audit of defendant's payroll books and records and the costs of the audit itself.[6] In light of defendant's failure

---

[5]Article VI, Section 6.06(c) of the CBAs states, in pertinent part, that:
"[Plaintiffs] shall have the right *** to examine and copy, the books, records, papers, payroll reports, W-2 forms, W-4 forms, S.S. Quarterly reports Form No. 941 and such other reports required by the Federal and State governments re payroll of [defendant] as may be necessary to determine the hours of work done and the place where the work was done by the employees covered by the labor agreement; and to permit the [T]rustees and/or Union to determine whether [defendant] is making full payment to the *** [F]unds in the amount required by the [CBAs]."

[6]Article VI, Section 6.06(d)of the CBAs states, in pertinent part, that:
"[Defendant's] failure to make the required contributions to the *** [F]unds, including savings and working dues deductions, shall make [defendant] liable to:
**1.** Failure to pay contributions and deductions within one (1) day following the ending of the next payroll period, makes [defendant] automatically liable for 10% damages.
**2.** Damages in the amount of 10% of the amount due; plus

(continued...)

to answer the Complaint, there is no genuine issue of material fact to be submitted to the Court. *See Joe Hand Promotions, Inc.* v. *Alba*, 2002 WL 1484398, at *1 (S.D.N.Y. 2002).  The Court, pursuant to the terms of the CBAs and correspondence submitted into evidence, views as true the following allegations: (1) that there were two collective bargaining agreements; (2) that defendant was party to such; (3) that the CBAs provided for an audit of defendant's payroll books and records; (4) that defendant has thus far not allowed plaintiffs to conduct said audits; and, as such, (5) that defendant is liable for the reasonable attorney's fees and costs incurred by plaintiffs in pursuing this action and for the costs incurred by plaintiffs in conducting said audits.

Plaintiffs claim that their attorney's fees and costs in regards to this action total $4,070.00, with $564.00 in costs and $3,506.00 in attorney's fees.  In the attorney billing report submitted by plaintiffs, however, the attorney's fees totaled $3,026.00 for 28.8 hours of work — a reasonable attorney billing rate[7] — and the costs totaled $564.00.  As such, this Court finds it appropriate to award only those fees for which plaintiffs have submitted an attorney billing report.

---

[6](...continued)
    **3.**  6% interest from the date of the contributions and deductions were due; plus
    **4.**  Attorney's fees, court costs, C.P.A. costs and other costs incurred by the
*** [F]unds for the collections of the delinquent accounts."

[7]*See Journeyman Plumbers & Apprentices UA Local Union No. 22* v. *Boyd Mech. Inc.*, 2003 WL 23350132, at *2 (W.D.N.Y. 2003).

Accordingly, it is hereby **ORDERED** that plaintiffs' Motion for Default Judgment is granted, that defendant shall permit plaintiffs and/or their agents to conduct an audit of its payroll books and records for the period September 1, 2000 through March 31, 2003 as provided in Article VI, Section 6.06(c) of the CBAs, that defendant shall pay the cost of said audit and shall pay to plaintiffs their attorney's fees and costs in the amount of $3,590.00 as provided in Article VI, Section 6.06(d) of the CBAs, that, if defendant is found delinquent in its payments of employee fringe benefit contributions and/or Union membership contributions, defendant shall pay the amount in delinquency and interest and liquidated damages on such as provided in Section 6.06(d) of the CBAs and that the Clerk of the Court shall close this case.

DATED:      Buffalo, N.Y.

             June 29, 2005

                                              _____/s/ John T. Elfvin_____
                                              JOHN T. ELFVIN
                                              S.U.S.D.J.